# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO: 1:16-CR-124 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JAMES S. GWIN |
| -vs- | : | |
| | : | **DEFENDANT SIROUS ASGARI'S** |
| SIROUS ASGARI, | : | **RENEWED MOTION TO WAIVE JURY** |
| | : | **TRIAL OR ALTERNATIVELY TO** |
| | : | **PERMIT ATTORNEY-CONDUCTED** |
| Defendant. | : | **VOIR DIRE** |

Defendant Sirous Asgari, through counsel, waives his right to a jury trial under Rule 23(a) of the Federal Rules of Criminal Procedure and renews his request for this Court to adjudicate his case. (*See* R. 101 – Motion to Waive Jury Trial). Alternatively, Dr. Asgari requests this Court permit the attorneys for both parties to participate in voir dire. A memorandum in support is attached.

Respectfully submitted,

s/ STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928
s/ EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar: 0055556
s/ CATHI ADINARO
Attorney at Law
Ohio Bar: 0088731
1660 West Second Street, #750
Cleveland, OH 44113
(216)522-4856 Fax:(216)522-4321
E-mail: stephen_newman@fd.org
E-mail: edward_bryan@fd.org
E-mail: cathi_adinaro@fd.org

## **MEMORANDUM**

Dr. Sirous Asgari, an Iranian citizen, is charged with: one count of theft of trade secrets, in violation of 18 U.S.C. § 1832(a)(1), (2); eleven counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of visa fraud, in violation of 18 U.S.C. § 1546(a).[1] The subject matter of the alleged trade secret is "technical specifications regarding the progressive steps of heat treatments using Company A's process for the treatment of metals."[2]

In March 2018, Dr. Asgari moved to waive his right to a jury trial and proceed with a trial to the bench.[3] In his motion, Dr. Asgari acknowledged that the Supreme Court has held a defendant does not ordinarily have a constitutional right to waive his right to a jury trial without the government's consent.[4] However, the Supreme Court recognized that there may be situations in which a defendant's reason for waiving the right to a jury trial would override the government's refusal to consent to a trial by the court.

> We need not determine in this case whether there might be some circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial.[5]

The Sixth Circuit acknowledges that, under *Singer*, the facts and circumstances of a given case may require trial by a court rather than a jury to ensure a fair and impartial trial.[6] Dr. Asgari again stresses that this case presents such compelling circumstances that forcing him to try his case to a jury would result in a denial of his right to an impartial trial. The only way to ensure Dr.

---

[1] (Dkt. 7).
[2] (Dkt. 63, Page 2 citing Dkt. 7, ¶ 16).
[3] (R. 101).
[4] *Singer v. United States*, 380 U.S. 24 (1965).
[5] *Id.* at 37.
[6] *United States v. Wright*, 491 F.2d 942, 945 (6th Cir. 1974).

2

Asgari's constitutional right to a fair and impartial adjudication is to present his case to the Court. Specifically, a bench trial is appropriate here because Dr. Asgari's nationality combined with the allegations and the government's request for special handling of the evidence presents an unusually high risk of bias. Additionally, the defense being presented is primarily a legal one and the subject matter of the trade secret is very technical and complex.

This Court denied Dr. Asgari's request for a bench trial in April 2018 but Dr. Asgari renews his request based on additional developments both in international relations with Iran and in this case. Tensions between Iran and the United States are high. The United States has publically blamed Iran for the attack on two oil tankers in the Gulf of Oman.[7] This attack has caused a spike in oil prices.[8] In just the past couple of days Iran shot down a U.S. military drone and President Trump is threatening retaliation.[9] Almost every news organization is discussing the possibility of war with Iran. In fact, "[h]alf of all Americans believe that the United States will go to war with Iran 'within the next few years,' according to a Reuters/Ipsos public opinion poll."[10]

Coupled with the political tensions with Iran are the allegations that Dr. Asgari was working on a United States Navy Project. The defense anticipates there will be testimony from government witnesses that there was a fear Dr. Asgari was unlawfully transferring technology to Iran. The subject matter of the technology in this case is complex and technical. Most jurors will know from extensive media coverage that the United States is concerned about Iran developing

---

[7] https://www.washingtonpost.com/world/national-security/pompeo-blames-iran-forblatant-assault-on-oil-tankers-in-the-middle-east/2019/06/13/9b3c75ae-8e0d-11e9-b162-8f6f41ec3c04_story.html?utm_term=.3105870ca18a

[8] https://www.cbsnews.com/news/oil-tanker-attack-gulf-of-oman-crude-prices/

[9] https://www.nytimes.com/aponline/2019/06/21/us/politics/ap-us-united-states-iran.html

[10] https://www.reuters.com/article/us-usa-iran-poll-idUSKCN1SR27K

nuclear technology. It would not be a leap for a juror to conclude, without such evidence being presented, that Dr. Asgari was trying to steal military secrets or help develop Iranian military technology. This prejudice or bias will be enhanced if this Court grants the government's request to handle documents it alleges contain trade secrets in a special way.[11] This special handling includes restricting access to who may view certain documents and displaying redacted versions of documents. While this special handling, if granted by the Court, should not afford a presumption of anything it will affect the jury's perception of the evidence – whether consciously or unconsciously.

Moreover, the defense to this case is, in large part, a legal one. There will be testimony about the different types of visas and the permissible activities for the various visa types. There will be testimony about how companies can legally choose to protect its proprietary information, including patents and when information becomes publically available.[12] A trial to the bench will alleviate the government's concern about testimony impermissibly bleeding over into the law. Considering all of the factors, the only way to ensure Dr. Asgari's constitutional right to a fair and impartial trial is to present his case to the Court instead of the jury.

### a. Alternatively, Dr. Asgari requests this Court permit the attorneys to conduct voir dire.

For the reasons stated above, the only way to protect Dr. Asgari's constitutional right to a fair trial is to proceed with a bench trial. However, should this Court deny his request for a bench trial, Dr. Asgari requests this Court permit the attorneys for both parties to conduct voir dire.

---

[11] (*See* R. 91).

[12] In the government's trial brief, it seeks a motion in limine to prevent the defense from presenting testimony about the law. Dr. Asgari will file a response separately addressing this issue. However, the government states that it will be calling Valerie Chittenden from the Department of State to testify about the types of visas and the permissible activities of various visa types. Thus it is clear there will be at least some testimony of the law at trial.

Additionally, to facilitate an expeditious jury selection undersigned counsel requests the Court use a special jury questionnaire[13] and disclose the questionnaires to counsel for both sides at least 48 hours in advance.[14]

The right to a fair and impartial jury is a cornerstone of American jurisprudence and one of the most fundamental rights the United States Constitution guarantees.[15] The Sixth Amendment to the United States Constitution provides for a trial by jury, with the right to an impartial jury considered as an integral part of this right. The United States Supreme Court has recognized that adequate *voir dire* is critical to the protection of a defendant's Sixth Amendment right to a fair trial. For example, in *Morgan v. Illinois*, 504 U.S. 719 (1992), the Court noted:

> [P]art of the guarantee of the defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.[16]

*Voir dire* is considered by many to be the most significant part of any trial. Even the Supreme Court acknowledges that *voir dire* "represents the 'jurors' first introduction to the substantive factual and legal issues in a case' … [t]he influence of the *voir dire* process may persist through the whole course of the trial proceedings."[17]

Attorney-conducted *voir dire* "constitutes an essential safeguard for the administration of justice."[18] *Voir dire* examination by two lawyers provides "multiple functions of screening out [ ]

---

[13] Defense counsel will file separately a proposed special jury questionnaire.
[14] *See* Loc. R. 24.1 & 24.2
[15] U.S. CONST. Amend. VI.
[16] 504 U.S. at 729–730 (citations and quotation marks omitted).
[17] *Powers v. Ohio*, 499 U.S. 400, 412 (1991).
[18] Alice Padawer-Singer, Andrew Singer, *Rickie Singer,* Voir Dire *by Two Lawyers: An Essential Safeguard*, 57 Judicature 386, 391 (1974) (attached as Exhibit A).

prejudiced jurors, . . . commit[s] jurors to the importance and meaning of legal procedures, and sensitiz[es] jurors to various aspects of the case."[19] Furthermore, attorney-conducted *voir dire* is widely considered to be more effective than judge-conducted *voir dire* because of counsel's more intimate knowledge of a case.[20] In preparing for trial, attorneys "extensively review[ ] and research[ ] the facts of the case for a period of time."[21] A judge does not enjoy this same degree of familiarity with the facts of a case. Their position does not afford such thoroughness for "a judge has to give his [or her] attention to various trials during that period of time."[22]

Judge-conducted *voir dire* can be inherently less effective. When all or most of the *voir dire* examination is conducted by the judge, for example, "inhibiting factors exist that discourage honest responses from prospective jurors."[23] In one of the largest empirical studies of *voir dire*, funded by the United States Department of Justice, researchers sought to determine whether the level of juror self-disclosure was affected by the identity of the questioner, or the method of questioning.[24] The researchers sought to verify or refute past social science research about self-disclosure interviews.[25]

Researchers found that the prospective jurors viewed the judge as an authority figure and were much more guarded in their responses.[26] The jurors tended to provide less self-revealing information and were much more conservative with the responses during judge-initiated

---

[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] *Id*.
[23] Lois Heaney, *The Case for Meaningful* Voir Dire *On Race and Sexual Orientation Bias*, 3 Cal. St. B. Crim. L.J. (2001), available at
http://www.njp.com/articles/CaseForMeaningfulVoir%20Dire.pdf.
[24] *See* Susan Jones, *Judge- Versus Attorney-Conducted* Voir Dire*: An Empirical Investigation of Juror Candor*, 11 LAW & HUM. BEHAV. 131 (attached as Exhibit B).
[25] *Id*. at 134-35
[26] *Id*. at 143-45

questioning.[27] This correlation to past research lead to the observation that "[I]t seems from the direction and magnitude of the change scores that during a judge-conducted *voir dire* jurors attempted to report not what they thought or truly felt about an issue, but instead what they believed the judge wanted to hear."[28] This skew continued to exist even when the judge adopted a less formal method of examination.[29] In contrast, the jurors did not view the attorneys as possessing the same type of authority as the judge, which tended to result in a greater degree of self-disclosure.[30] When the attorneys conducted the *voir dire* in a warm and "liking" manner, juror's self-disclosure levels rose.

Federal Rule of Criminal Procedure 24 requires the Court, if it conducts voir dire, to either allow the attorneys to ask further questions or submit further questions to the Court so that the Court may ask them.[31] The local rules also permit the parties to participate in voir dire. Local Rule 24.2 states that the Court "shall conduct the initial examination of all prospective jurors touching upon their qualifications to serve as jurors in the pending proceeding," and the parties may submit written questions to be included with the Court's examination. The rule further provides that "[i]n all trials . . . counsel for the plaintiff and counsel for the defendant each may be allowed such a period of time as approved by the Court to conduct voir dire examinations of prospective jurors."[32]

For all of the reasons detailed above, Dr. Asgari has grave concerns about prejudice and bias. As an Iranian citizen it is impossible for Dr. Asgari to have a jury of his peers. The political tension with Iran in conjunction with the allegations in this case require a probing voir dire.

---

[27] *Id*. at 144
[28] *Id*.
[29] *Id*. at 145
[30] *Id*. at 134
[31] Fed. R. Crim. P. 24(a)(2).
[32] Loc. R. 24.2(b).

7

Defense counsel must be allowed to question the potential jurors not just about explicit bias and prejudice but also about implicit or subconscious bias. Every potential juror will have heard about Iran in the news recently. There must be a discussion about what they have heard and how they have, or have not, internalized it. If Dr. Asgari is forced to proceed to a trial by jury, it is imperative that his counsel be permitted to question, individually, the potential jurors to uncover any bias or prejudice.

One of the most frequently cited reasons for limiting attorney *voir dire* is the belief that it unduly prolongs the trial process. However, a survey of 124 federal judges conducted by the Federal Judicial Center reported no significant increase in jury selection times between those judges who allowed attorney conducted *voir dire* versus those that did not.[33] In an effort to expedite the voir dire, defense counsel requests this Court use a special juror questionnaire that is specifically tailored to this case. Additionally, counsel requests this Court disclose the special juror questionnaires to counsel at least 48 hours prior to trial. This will significantly expedite the voir dire process and is consistent with the local rules.

Local Rule 24.1 states:

(a) The Court may distribute to all prospective jurors a questionnaire, in the form attached as Appendix A. If utilized, the questionnaire shall be sent to the jurors with their notice to report and shall be completed and returned by them.

(b) **Upon motion for good cause shown, or upon the Court's own motion, the Court may distribute another juror questionnaire designed specifically for the case at issue**.

(c) Unless otherwise ordered, **both questionnaires referred to in this Rule shall be made available for all counsel on the last business day before the trial**.

(d) (1) Questionnaires will be available to counsel for the limited purpose of assisting their preparation for voir dire. They are not otherwise to be used, copied,

---

[33] *See* Susan Jones, *Judge- Versus Attorney-Conducted* Voir Dire*: An Empirical Investigation of Juror Candor*, 11 LAW & HUM. BEHAV. 131 (attached as Exhibit B).

or disclosed without Court order. Upon selection of a jury, all questionnaires shall be returned to the Clerk. Contact prior to trial by any counsel, party, or any person acting on behalf of any counsel or party with any prospective juror is absolutely forbidden. Noncompliance with this directive or any other limitation imposed with reference to the disclosure or use of the questionnaires will lead to contempt of Court citation and other appropriate sanction.

Dr. Asgari requests this Court grant his motion to waive his constitutional right to trial by jury in order to ensure the case be decided fairly and impartially as guaranteed by the Sixth Amendment. Alternatively, if Dr. Asgari is forced to proceed by jury, undersigned counsel requests this Court permit the attorneys to participate in voir dire.

Respectfully submitted,

s/ STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar:  0051928
s/ EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar: 0055556
s/ CATHI ADINARO
Attorney at Law
Ohio Bar: 0088731
1660 West Second Street, #750
Cleveland, OH 44113
(216)522-4856 Fax:(216)522-4321
E-mail: stephen_newman@fd.org
E-mail: edward_bryan@fd.org
E-mail: cathi_adinaro@fd.org

Counsel for Sirous Asgari

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 24, 2019, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by email. Parties may access this filing through the Court's system.

                                             s/ CATHI ADINARO
                                             Attorney at Law
                                             Ohio Bar: 0088731