IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR124 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| SIROUS ASGARI, | ) | GOVERNMENT'S SUPPLEMENTAL |
| | ) | TRIAL BRIEF |
| Defendant. | ) | |

The United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Daniel J. Riedl and Duncan T. Brown, Assistant United States Attorneys, and William A. Mackie, Trial Attorney, National Security Division, Department of Justice, respectfully submits the following Supplemental Trial Brief in anticipation of the November 12, 2019, jury trial of Defendant Sirous Asgari.

## I. INTRODUCTION

The government hereby incorporates and renews the arguments made in its initial Trial Brief, which was filed on March 31, 2018. (R. 105: Trial Br., PageID 1264-1304). In addition, the government submits this Supplemental Trial Brief in order to (1) reiterate a legal issue that arose during the final pretrial hearing; (2) update witness information; and (3) address certain problematic defense exhibits.

## II. TRIAL DOCUMENTS AND EXHIBITS

The government filed its proposed jury instructions and voir dire on March 29, 2018, and March 31, 2018, respectively. (R. 102: Government's Proposed Jury Instr. and Verdict Forms, PageID 1168-1249; R. 104: Government's Proposed Voir Dire, PageID 1257-63). The

government will re-file these documents on November 5, 2019 to reflect updated dates and attorney information. The government will also provide the Court and Defendant with a copy of the exhibits on November 5, 2019. Additionally, the government will provide the Court with its witness list on November 5, 2019.

### III. SUPPLEMENT OF LAW

#### A. DISCUSSIONS OF PATENT LAW SHOULD BE LIMITED

During pretrial hearings in this matter, including the last hearing held on October 8, 2019, this Court inquired whether there had been any litigation regarding the validity of the patents held by Swagelok in the area of low temperature carburization. The government avers that the validity of Swagelok's patents are not at issue here and no testimony or law should be presented to the jury regarding the validity of the patents themselves. Because the requirements to file a ***patent*** are both technical and irrelevant to the instant proceedings, testimony and questions about ***patent law*** should be limited. The government does not suggest that defendant cannot ask questions about the underlying facts and processes disclosed to the public in a patent, as such material may be relevant to whether a trade secret was properly guarded by the victim. Discussions into the legal and technical requirements to file and obtain a patent, however, are not only irrelevant to the facts at issue in this case, but serve only to confuse the issues, mislead the jury, and present matters that are more unfairly prejudicial than probative. Fed. R. Evid. 403. As discussed in the government's initial Trial Brief (see R. 105: Trial Br., PageID 1283-89), such lines of questioning can confuse spectators and participants alike.

##### 1. The "Best-Mode" Obligation is Temporally Limited

The filing and publication of a patent does not prohibit an inventor from later developing new techniques and processes, which can be held as trade secrets. In fact, a patent applicant is

statutorily prohibited from inserting "new matter," that is, newly developed "best modes" into existing patent applications. See 35 U.S.C. § 132.

However, the best mode requirement does not require an inventor to disclose *production* details so long as the means to carry out the invention are disclosed. Wahl Instruments, Inc. v. Acvious, Inc., 950 F.2d 1575, 1580, 21 USPQ2d 1123, 1127 (Fed. Cir. 1991); see also In re Gay, 309 F.2d at 774, 135 USPQ at 316. This includes providing supplier/trade name information where it is not needed, i.e., where such information would be "mere surplusage—an addition to the generic description." Randomex, 849 F.2d at 590, 7 USPQ2d at 1054. Such supplier/trade name information must be provided only when a skilled artisan could not practice the best mode of the claimed invention absent this information. See Chemcast, 913 F.2d 923, 16 USPQ2d 1033 (patentee failed to disclose specific composition of preferred material or fact that it possessed a specific hardness, instead merely supplying a very general description of the material and a broad hardness range, thus effectively concealing the best mode). Were this a patent infringement matter, the burden of establishing invalidity by this standard lies with the party seeking such a holding, namely, Defendant Asgari. This however, is not such a case and testimony or evidence of the above is irrelevant and would only serve to confuse the jury.

Moreover, the "best mode" and duty of candor analysis noted above apply only *at the time the patent application is made* and does not extend indefinitely onward. Indeed, Congress has explicitly prohibited patent applicants from amending their applications based on data discovered post-application. See 35 U.S.C. § 132 (strictly prohibiting the addition of new material into a patent); see also Transco Products Inc. v, Performance Contracting, Inc., 38 F.3d 551, 558-59 (Fed. Cir. 1994) (holding the relevant date for evaluating a best mode disclosure is the date of the initial application). In Transco, the Federal Circuit determined that the district

3

court's decision and determination that a patent holder should have amended his patent application "illustrate[d] a misunderstanding of patent law and patent office practice. The subject matter that the district court believes Pinsky should have disclosed in his continuation application would clearly have constituted 'new matter' pursuant to 35 U.S.C. § 132, 37 C.F.R. § 1.118, and MPEP §§ 608.04(a)–(c) and 706.03(o)." Id. The Transco court stressed that "the introduction of a new best mode disclosure would constitute the injection of 'new matter' into the application and automatically deprive the applicant of the benefit of the earlier filing date of the parent or original application for any claim whose validity rests on the new best mode disclosure." Id. It would be an odd result to hold that a patent applicant, who met its duty of candor at the time of the initial application in disclosing the then-known best mode, and was prohibited by law from amending that application based on a new discovery, could somehow be found to be a "bad actor" for continuing research. "Such a rule would subvert the patent system's goal of promoting useful arts through encouraging early disclosure. An inventor's motivation to file early and then continue to test and improve upon his invention would be stifled [by such a rule]." Transco, 38 F.3d at 558. Accordingly, Congress and the Federal Circuit have recognized that such a strict barrier would effectively limit and discourage further invention and refinements of technology because to hold otherwise would require inventors to stop research and development once they patent an idea and effectively freeze in time all further beneficial discoveries.

      2.      Conclusion

Indeed, the confusion that may result from unnecessary forays into patent law are far more prejudicial than probative, and will not serve to illuminate the underlying question, ***which is whether Asgari appropriated a method or process that Swagelok kept closely guarded as a trade secret***.

4

## IV. HYBRID WITNESSES AND PRESENCE OF WITNESSES AT CERTAIN STAGES

In its initial Trial Brief, the government provided a list of individuals who may provide opinion testimony during trial. (R. 105: Trial Br., PageID 1293-94). John Simmons, TITLE?, from the Department of State, will now be providing expert testimony as an expert witness regarding Asgari's 2012 visa application. The Defendant was advised of this change and properly noticed pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

Also in its initial Trial Brief, the government requested the presence of Dr. Greg Shaw at counsel's table during certain stages of the proceedings. (R. 105: Trial Br., PageID 1295). The government now seeks to amend that request, and ask that Peter Williams, Swagelok Chief Scientist, be permitted to sit at counsel's table during any expert testimony presented by the Defendant concerning the trade secrets and during Defendant's own testimony, should he elect to testify. See, e.g., Fed. R. Evid. 615(3); United States v. Mohney, 949 F.2d 1397, 1404-05 (6th Cir. 1991). This case involves significant technical issues; the assistance of Mr. Williams is necessary for the government to handle the extensive technical information and data expected to be presented by the Defendant's experts, and to assist the government in mapping out its litigation strategy. The government still does not oppose any similar request by the Defendant to have his own experts present at counsel's table during the testimony of the government's expert witness.

## V. CHARACTER EVIDENCE/GOOD GUY EVIDENCE

A cursory review of the defense exhibits makes clear they intend to offer a significant number of inadmissible and immaterial exhibits. Defendant's Exhibit Nos. 11, 13-19, and 23-24 should be excluded as they clearly do not fall within the narrow strictures of Rule 405(a). Indeed, these family photographs, news articles, and other immaterial items are

inadmissible pursuant to the law set forth in the government's initial trial brief. (See R. 105: Trial Br., PageID 1297-1302); United States v. Daulton, 266 Fed. App'x 381, 386 (6th Cir. 2008) (citations and quotations omitted) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991) ("Evidence of good conduct is not admissible to negate criminal intent.").

### VI. CONCLUSION

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Daniel J. Riedl
Daniel J. Riedl (OH: 0076798)
Duncan T. Brown (NY: 3982931)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3669/3933
(216) 685-2378 (facsimile)
Daniel.Riedl@usdoj.gov
Duncan.Brown@usdoj.gov

William A. Mackie,
Trial Attorney, National Security
Division, Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                /s/ Daniel J. Riedl
                                                Daniel J. Riedl
                                                Assistant U.S. Attorney